

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00309-CV

**DENNIS & GAIL DAVIS,**

**Appellants**

 **v.**

**BNSF RAILWAY COMPANY,**

**Appellee**

### From the 21st District Court
### Burleson County, Texas
### Trial Court No. 25,151

## MEMORANDUM OPINION

This appeal involves the issue of jury misconduct. After a lengthy trial, nine weeks, the jury found BNSF's negligence did not cause Dennis Davis' cancer. The trial court rendered judgment that Dennis and Gail Davis take nothing in their suit against BSNF. The Davises filed a motion for new trial alleging jury misconduct and also issued subpoenas for six jurors and another witness. The trial court denied the motion for new trial and granted BSNF's motions to quash all subpoenas. The Davises appeal. Because the trial court did not err in denying the motion for new trial and granting the motions to quash, we affirm.

## INCOMPLETE REPORTER'S RECORD

The reporter's record consists only of the hearing on the motion for new trial. The court reporter filed a letter with this Court stating that the Davises no longer wish to appeal the entire trial and will only pursue the motion for new trial on appeal. The rules provide that if the appellant requests a partial reporter's record, the appellant must include in the request a statement of the points or issues to be presented on appeal and will be limited to those points or issues. TEX. R. APP. P. 34.6(c)(1). The Davises did not file a statement of the points or issues to be presented on appeal as required by the rule. TEX. R. APP. P. 34.6(c)(1). Therefore, we presume that the omitted portions of the record support the trial court's findings. *See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002); *Richards v. Schion*, 969 S.W.2d 131, 133 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

## JURY MISCONDUCT

To warrant a new trial for jury misconduct, the movant must establish (1) that the misconduct occurred, (2) it was material, and (3) probably caused injury.[1] TEX. R. CIV. P. 327a.; *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000). To show probable injury, there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he would otherwise have

---

[1] We proceed in this opinion to address the merits of Appellants' issues. We note, however, that if we determine there was jury misconduct and it was material, it would, nevertheless be almost impossible to determine harm, in essence that it probably caused injury, because without a full record of the evidence there is no way for us to evaluate whether the Davises' evidence was strong or weak, overwhelming or close, conclusive or barely more than a scintilla. Thus, we would have to presume the record not brought forth supported the trial court's decision on the denial of the motion for new trial.

done on one or more issues vital to the judgment. *Pharo v. Chambers County, Tex.*, 922 S.W.2d 945, 950 (Tex. 1996). Whether misconduct occurred and caused injury is a question of fact for the trial court. *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d at 372. Absent findings to the contrary, we must assume that the trial court made all findings in support of its decision to deny the motion for new trial. *Id*. The Davises had the burden to establish jury misconduct. *Id*.

The Davises contend that outside influences brought to bear upon the jury caused harm. In support of the motion for new trial, the Davises presented the affidavit of Debra Zavondy, an alternate juror. In the affidavit, Zavondy states that, "Jurors wrote quotes from the trial on the blackboard during the trial and prior to deliberating," "Juror Stephanie King told me that her close friend's boyfriend is currently employed at the Somerville creosote tie plant[2] and she was afraid she would get in trouble because of this", and "During the course of the trial when I was in town people would try to talk to me about the case and I would have to walk away from them. During one of these times I was told that Dennis Davis had filed other cases against the defendant." At the end of the statement concerning town people talking about the case, Zavondy hand-wrote "as well as other jury members." It is not clear whether she intends to state that other jury members were approached to talk about the case and had to walk away or whether other jury members were told about previous lawsuits.

---

[2] The Davises state in their brief that BSNF owned and operated Somerville Tie Plant at all relevant times up to and including March 28, 1995, at which time it sold the facility to Koppers, Inc.

Zavondy was an alternate juror and did not participate in deliberations. Any comments directed to her about the case did not affect the verdict. It is unclear what comments if any Zavondy alleges were made to members of the jury. The trial court did not err in not finding that any such comments probably caused a juror to vote differently than the juror otherwise would have done.

The Davises' attorney hired Louis Michalko, a private investigator, to investigate possible jury misconduct. Michalko interviewed jurors and spoke with confidential informants. In his affidavit, Michalko states that he spoke with Stephanie King about her relationship to a Somerville Tie Plant employee. King told Michalko that she met and talked to a yard supervisor at the Somerville Tie Plant. King declined to sign an affidavit. There is nothing to indicate King discussed the case with the employee. Michalko's affidavit does not show that any juror misconduct occurred.

The Davises also offered the affidavit of Ketran Cordrae Gentry in support of the motion for new trial. Gentry is employed at Koppers. Gentry states that the plant manager made it clear that employees should not testify against Koppers. Gentry's affidavit is dated December 21, 2008. The trial began on April 27, 2009 and jury deliberations began on June 25, 2009. Gentry's affidavit does not show that any jury misconduct occurred. The Davises did not establish material jury misconduct that probably caused injury. The trial court did not err in denying the motion for new trial. We overrule the first issue.

## DISCOVERY OF JURY MISCONDUCT

The Davises argue that the trial court denied the opportunity to conduct discovery on the issue of jury misconduct by granting BSNF's motions to quash the subpoenas of six jurors and one witness. We review a trial court's actions denying discovery for an abuse of discretion. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 661 (Tex. 2009). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id*.

Texas Rule of Civil Procedure 327 states:

a. When the ground of a motion for new trial, supported by affidavit, is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury, or that a juror gave an erroneous or incorrect answer on voir dire examination, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the communication made, or the erroneous or incorrect answer on voir dire examination, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that the injury probably resulted to the complaining party.

b. A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Jurors are not prohibited from discussing what took place during deliberations after the trial court discharges them from service, but there is a difference between jurors choosing to talk about their service and their being compelled to do so in discovery depositions and court hearings. *Ford Motor Co. v. Castillo*, 279 S.W.3d at 666.

There are several policy reasons why losing parties should not be allowed to conduct unfettered investigations into the jury's deliberations to try to prove such allegations, in essence putting the jury on trial. *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d at 366. These policy reasons include: (1) keeping jury deliberations private to encourage candid discussion of a case, (2) protecting jurors from post-trial harassment or tampering, (3) preventing a disgruntled juror whose view did not prevail from overturning the verdict, and (4) protecting the need for finality. *Ford Motor Co. v. Castillo*, 279 S.W.3d at 666; *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d at 366-67.

The Davises' affidavits in support of the motion for new trial were insufficient to require the trial court to hear evidence as provided in TEX. R. CIV. P. 327a. The affidavits contain only speculation of possible outside influence and such speculation does not raise an issue of jury misconduct. *See Lopez v. City Towing Associates, Inc.*, 754 S.W.2d 254, 259 (Tex. App.—San Antonio 1988, writ den'd). The trial court did not err in granting BSNF's motions to quash the subpoenas of the jurors and witness. We overrule the second issue.

## CONCLUSION

We find that the trial court did not err by denying the motion for new trial and granting the motions to quash the subpoenas. We affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Affirmed
Opinion delivered and filed October 6, 2010
[CV06]